**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4625**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN JOSEPH MURN,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:17-cr-00212-GLR-1)

Argued: October 31, 2019                                Decided: May 12, 2020

Before NIEMEYER and AGEE, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Kleeh wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:** Joanna Beth Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Matthew James Maddox, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KLEEH, District Judge:

Stephen Joseph Murn appeals his 144-month sentence, contending that the district court's upward variance is substantively unreasonable. Finding no error, we affirm.

I.

Stephen Joseph Murn was charged by superseding indictment for an attempted bank robbery on August 19, 2016, and the armed robbery of another bank on August 29, 2016, each having occurred in Pasadena, Maryland. On August 19, 2016, Murn entered a branch of PNC Bank wearing a wig, a baseball cap, false facial hair, and sunglasses, and carrying a bag. After he stopped at the check-writing station in the lobby, he walked toward a teller station, placed his bag on the counter, and said "C'mon!", to which the teller responded, "No." Murn took his bag and exited the bank.

On August 29, 2016, Murn entered a branch of Hamilton Bank wearing an orange safety vest over a t-shirt and a hard hat with a towel draped beneath it, and again carrying a bag. Murn walked to the check-writing station where he wrote a note on a deposit slip stating: "BOMB ALL MONEY NOW PLEASE." Murn walked to a teller station, removed a fake bomb from his bag, and placed it on the counter. The fake bomb was made from various household items but appeared to be a genuine pipe bomb. It was cylindrical in shape, with visible red and blue wires and a kitchen timer. Murn told the teller the object was a bomb and demanded money. During this robbery, two other tellers noticed him and the fake bomb. Murn became hostile and screamed, "I want all of it! All of it!" The teller opened the cash drawer, and Murn reached over the counter into the drawer, removing bundles of United States Currency totaling approximately $2,270.

3

As Murn attempted to exit the Hamilton Bank through a one-way entry door, he kicked the plate glass on the door when it would not open and shattered the glass. He dropped some of the money and scrambled to pick it up. The bank manager then came into the lobby from a back office, unaware of the robbery and the bomb threat, but taking notice that Murn damaged the entry door. The manager directed Murn to leave and helped him go out the exit door. After Murn left the bank, the tellers told the manager about the bomb threat, and the bank personnel and customers were evacuated.

After leaving the bank, Murn fled on foot across the street from the bank and ran through a gas station to a nearby parking lot where his car was parked. Murn got into his car and drove away. He was observed speeding away from the robbery, weaving in and out of traffic. Murn then ran a red light to make a left turn against traffic onto a highway, which caused multiple vehicles to swerve out of the way in order to avoid colliding with his car.

Murn's use of a fake bomb during the August 29, 2016, robbery caused multiple emergency responses by multiple government agencies, including law enforcement agencies, the Annapolis Fire Marshal's Office ("AFMO") Fire and Explosives Services Unit, and the Anne Arundel County Fire Department. When Murn fled the bank, he left the fake bomb sitting on the counter in front of the teller station he robbed. Upon responding to the scene of the robbery, the AFMO prepared to have a robot enter the bank and examine the device. An AFMO investigator in protective gear approached the bank to provide a point of access for the robot, while another AFMO investigator operated the robot and eventually located the device. Investigators determined that the device was potentially

4

fake, donned protective gear, and entered the bank in order to examine the device. Only then was the device confirmed to be a fake and the scene deemed safe for further investigation.

Murn was not located by law enforcement until the following morning, on August 30, 2016, when he was observed by Pennsylvania State Police ("PSP") officers as he exited and walked to his vehicle from a Chambersburg, Pennsylvania diner. When a PSP officer attempted to arrest him, Murn swung his fist at the officer, attempting to punch him in the face before kicking him several times in the chest and side. As they struggled, Murn threatened to kill the officers present. Glass vials containing controlled substances and drug paraphernalia were recovered from Murn's vehicle.

Once Murn was transported to the PSP Barracks, he complained of chest pain and was transported to Chambersburg Hospital while remaining in the custody of the Franklin County Jail. At the hospital on September 3, 2016, and under the supervision of two correctional officers, Murn disarmed an officer by grabbing his firearm and holster from the officer's duty belt. The officer recovered his weapon, and Murn was placed in additional restraints. When he was discharged from the hospital and transported to the Franklin County Jail, Murn attempted an escape by destroying a side window of the transport van and trying to crawl out. Correctional officers stopped the vehicle, placed Murn back inside, and transported him to jail.

Murn was detained and later pled guilty in Pennsylvania state court to charges of terroristic threats, disarming a law enforcement officer, and attempted escape. On August 16, 2017, he received multiple sentences of 24 to 48 months in custody. While he was

5

detained in Pennsylvania, on April 19, 2017, a Maryland federal grand jury returned an indictment charging Murn with one count of Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d), for the robbery of Hamilton Bank on August 29, 2016. On January 24, 2018, the grand jury returned a Superseding Indictment, adding one count of Attempted Bank Robbery, in violation of 18 U.S.C. § 2113(a), for the attempted robbery of PNC Bank on August 19, 2016.

On April 3, 2018, Murn pled guilty to both counts of the superseding indictment. At sentencing, the district court considered the advisory sentencing range and determined that Murn's offense level was 26. With a criminal history of Category of III, Murn's guidelines range was 78 to 97 months' imprisonment.[*] The district court deviated upward from the range and sentenced him to 144 months of imprisonment on each count. The

---

[*] The Presentence Report ("PSR") calculated Murn's offense level for Count 1 to be 27. The PSR concluded that property of Hamilton Bank, a financial institution, was taken under U.S.S.G. § 2B3.1(b)(1) and that a fraudulent bomb was brandished under U.S.S.G. § 2B3.1(b)(2)(E). Those specific offense characteristics increased Murn's base offense level by five levels. An additional two-level adjustment was made, under U.S.S.G. § 3C1.1, for obstruction of justice. For Count 2, the PSR calculated the offense level to be 24, with a two-level increase under U.S.S.G. § 2B3.1(b)(1) because the object of the offense was the property of PNC Bank, a financial institution, and a two-level increase, under U.S.S.G. § 3C1.1, for obstruction of justice. The PSR applied a multiple count adjustment for a combined adjusted offense level of 29. With a three-level adjustment for acceptance of responsibility, Murn's total offense level was calculated to be 26. The PSR concluded Murn's criminal history Category to be V, based on a criminal history score of 12. Murn objected to the PSR's application of the obstruction enhancement for both charged offenses, arguing that it should only apply to Count 1. Murn also argued that if the obstruction of justice enhancement was only applied to Count 1, then the increase in offense level based on grouping was one point instead of two. At sentencing, the district court determined that six points of Murn's qualifying convictions arose out of related conduct and ordered that the PSR be corrected to reflect a criminal history Category of III instead of V. This lowered Murn's guidelines range to 78 to 97 months.

6

court explained that the upward departure was necessary to "recognize the seriousness of the offense and the damage that has been caused by [Murn] and the risk that he created to members of the public and law enforcement by engaging in this criminal act." J.A. 297.

Murn timely appealed his sentence, and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

When sentencing criminal defendants after *United States v. Booker*, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), district courts must first correctly calculate the defendant's sentencing range under the Sentencing Guidelines. *See Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). *See also United States v. Allmendinger*, 706 F.3d 330, 340 (4th Cir 2013). The court must then give the parties an opportunity to argue for what they believe to be an appropriate sentence, and the court must consider those arguments in light of the factors set forth in 18 U.S.C. § 3553(a). *See Gall*, 552 U.S. at 49-50; *United States v. Abu Ali*, 528 F.3d 210, 260 (4th Cir. 2008).

Here, Murn does not challenge his sentence for procedural error. The Court instead must consider whether the sentence imposed was substantively reasonable under an abuse-of-discretion standard. *See United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010); *United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010). The Court reviews a sentence imposed for reasonableness, considering the "extent to which the sentence . . . comports with the various, and sometimes competing, goals of § 3553(a)." *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006), *overruled on other grounds by Rita*, 551 U.S. 338 (2007) and *Gall*, 552 U.S. 38. If a district court provides an inadequate statement of

7

reasons or relies on improper factors in imposing a sentence outside the properly calculated advisory sentencing range, the sentence will be found unreasonable and vacated. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). District courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors. *See United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011) (quoting *Gall*, 552 U.S. at 51) (explaining that appellate courts "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" the sentence imposed)).

Murn maintains that his sentence was substantively unreasonable because the upward variance was improper in view of the mitigating circumstances he presented at sentencing. Murn insists that he does not ask this Court to reweigh the factors considered by the district court in deciding the appropriate sentence. He instead wants the Court to review the evaluation of his history and characteristics to determine if the district court abused its discretion. In particular, Murn disputes the district court's review of his substance abuse history and its conclusion that when he relapses, he is a substantial threat to public safety. He argues that the district court improperly elevated the potential threat Murn poses to the public above the mitigating evidence of addiction. Murn also challenges the manner by which the district court considered his mental health condition and argues that his violent post-offense conduct arose from his suicidal ideation rather than an intent to injure others including law enforcement. Murn argues that the district court should have revisited his mental health history in explaining its balance of mitigating and aggravating factors in the case and that the district court's failure in this regard was not reasonable.

III.

Although sentencing courts are statutorily required to state their reasons for imposing a sentence, pursuant to 18 U.S.C.A. §3553(c), it is not necessary that a district court issue a comprehensive, detailed opinion. *See Rita v. United States*, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Rather, the district court's explanation must be sufficient "to satisfy the appellate court that [it] has considered the parties' arguments and has a reasonable basis for exercising [its] own legal decisionmaking authority." *Id.*; *see United States v. Boulware*, 604 F.3d 832, 837 (4th Cir. 2010); *United States v. Allmendinger*, 706 F.3d 330, 343 (4th Cir. 2013). The district court is not required to discuss each § 3553(a) factor extensively but need only "provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review." *Allmendinger*, 706 F.3d 343 (internal quotation marks omitted).

Here, the district court "properly considered and fully explained its decision pursuant to the factors set forth" in § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence, and the need to protect the public from further crimes by Murn. *United States v. Diosdado-Star*, 630 F.3d 359, 367 (4th Cir. 2011). The district court carefully considered Murn's obstruction conduct and his attempt to escape from custody before trial when he disarmed an officer while in the hospital. The court also heard argument on whether Murn committed reckless endangerment during flight and determined that the proof for a guideline adjustment was not met by a preponderance of the evidence. The court further reviewed Murn's history and characteristics, particularly his long history of similar convictions and their increasing seriousness, as well as the impact of a significant

9

prior criminal justice sentence on him. The court also heard argument from Murn's counsel that he had already served two years in custody in Pennsylvania for the same conduct. The court found much of Murn's criminal history to be driven primarily by his drug addiction, and refused to increase his criminal history category as requested by the government.

In announcing its sentence, the court determined that, despite Murn's history, which included a mental health condition and significant substance abuse history, his offense conduct was very serious and caused significant damage to his victims. The court further found that Murn is a substantial threat to public safety when he relapses and that he is always going to be at a risk of relapsing. While Murn claims on appeal that his offense conduct is not indicative of his behavior, the Court disagrees. The record reflects that the district court conducted a thorough assessment of Murn and his offense conduct at sentencing, and "we conclude that we must give due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Id.* (internal quotation marks and alterations omitted).

## IV.

Accordingly, we affirm the district court's judgment.

*AFFIRMED*